Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | Case No. 21-8188MB |
|---|---|
| *(Briefly Describe the property to be searched or identify the person by name and address)* | |

Alcatel cell phone, Model 4060A, IMEI: 014699004780956;
Alcatel cell phone, Model 4060A, IMEI: 014699003987735;
Alcatel cell phone, Model 4060A, IMEI: 014699007256277;
Life Wireless cell phone, Model Drive II, IMEI:
354545081961795;  Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614; and AT&T Huawei cell
phone, Model H1711, Serial number unknown

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer of an attorney for the government requests the search of the following person or property located in the District of Arizona.
*(identify the person or describe the property to be searched and give its location):*

### As described in Attachment A, incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

### As described in Attachment B, incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____9-16-21_____.
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   9-2-21 @ 12:21 p.m.      _____
                                                                          *Judge's signature*

City and State:  <u>Phoenix, Arizona</u>                  <u>Honorable John Z. Boyle, U.S. Magistrate Judge</u>
                                                                          *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:_____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED

This warrant applies to the following six items in custody of Affiant.

- Alcatel cell phone, Model 4060A, IMEI: 014699004780956;
- Alcatel cell phone, Model 4060A, IMEI: 014699003987735;
- Alcatel cell phone, Model 4060A, IMEI: 014699007256277;
- Life Wireless cell phone, Model Drive II, IMEI: 354545081961795;
- Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614;
- AT&T Huawei cell phone, Model H1711, Serial number unknown.

## ITEMS:

Search for all items listed within ATTACHMENT B.

## ATTACHMENT B
## ITEMS TO BE SEARCHED AND SEIZED

**I.   Items seized:**

- Alcatel cell phone, Model 4060A, IMEI: 014699004780956;

- Alcatel cell phone, Model 4060A, IMEI: 014699003987735;

- Alcatel cell phone, Model 4060A, IMEI: 014699007256277;

- Life Wireless cell phone, Model Drive II, IMEI: 354545081961795;

- Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614;

- AT&T Huawei cell phone, Model H1711, Serial number unknown.

**II.   Items to be searched:**

All items described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2423(b) and (f) (travel with intent to engage in illicit sexual conduct), and 2260A (commission of a felony offense involving a minor while a registered sex offender), involving Kyle Matthew Thompson, including, for each cell phone identified above and in Attachment A:

    a. Any electronic communications with other individuals, including but not limited to, Jane Doe 1, Jane Doe 2, K.S., and/or any other minor, relating to travel to engage in illicit sexual conduct with a minor, or travel by a minor to come to Thompson, sexual contact whether in person to electronic communications evidencing the intent to coerce and entice a minor, have sexual contact with a minor, and the production, distribution, receipt, or possession of child pornography including communications relating to a minor

photographing him/herself to send to Kyle Thompson, or Kyle Thompson to send photographs of himself to another individual.

b. Any electronic communications by any person with any other person, including but not limited to or from Jane Doe 1, Jane Doe 2, and/or any other minor, relating to transfer, receipt, or possession of any nude or partially nude material.

c. Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found, including Graphic Interchange formats (including, but not limited to, JPG, GIF, TIP AVI, and MPEG);

d. Motion pictures, films, videos, and other recordings of visual depictions of child pornography;

e. Information, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography that were transmitted or received using a computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail, including:

   1) Letters and other correspondence including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by U.S. mail or by computer, of child pornography;

   2) Records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

2

3) Records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

4) Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography;

5) Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography. These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

f.  Credit card information, which evidences ownership or use of the laptop and cellular telephones listed in Attachment A including payment for Internet access and computers or electronic media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

g.  Records or other items, which evidence ownership or use of the laptop and/or cellular telephones, including sales receipts;

3

h.  Evidence of who used, owned, or controlled the laptop and/or cellular telephones at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

i.  Evidence of software that would allow others to control the laptop and/or cellular telephones, such as viruses, Trojan horses, and other forms of malicious software;

j.  Evidence of the lack of such malicious software; and,

k.  Evidence of the times the laptop and/or cellular telephones were used.

4

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
*(Briefly Describe the property to be searched
or identify the person by name and address)*

Alcatel cell phone, Model 4060A, IMEI: 014699004780956;
Alcatel cell phone, Model 4060A, IMEI: 014699003987735;
Alcatel cell phone, Model 4060A, IMEI: 014699007256277;
Life Wireless cell phone, Model Drive II, IMEI:
354545081961795;  Samsung flip cell phone, Model: SM-
B311V, MEID: A000004768B614; and AT&T Huawei cell
phone, Model H1711, Serial number unknown

Case No.  21-8188 MB

## ELECTRONICALLY SUBMITTED APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Special Agent Elliott M. White, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona:

**As described in Attachment A, incorporated by reference.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

**As set forth in Attachment B, incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 2423(b) and (f) | Travel with Intent to Engage in Illicit Sexual Conduct |
| 18 U.S.C. § 2260A | Commission of Felony Offense by a Registered Sex Offender |

The application is based on these facts:

**See attached Affidavit, incorporated by reference.**

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA *s/Gayle Helart*

_____ Sworn by Telephone

_____
*Applicant's Signature*

Elliott M. White, Special Agent, FBI
*Applicant's printed name and title*

Date and time issued: 9-2-21 @ 12:21 p.m.

_____
*Judge's signature*

City and State: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE**
**SEARCHED**

This warrant applies to the following six items in custody of Affiant.

- Alcatel cell phone, Model 4060A, IMEI: 014699004780956;
- Alcatel cell phone, Model 4060A, IMEI: 014699003987735;
- Alcatel cell phone, Model 4060A, IMEI: 014699007256277;
- Life Wireless cell phone, Model Drive II, IMEI: 354545081961795;
- Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614;
- AT&T Huawei cell phone, Model H1711, Serial number unknown.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1

# ATTACHMENT B
## ITEMS TO BE SEARCHED AND SEIZED

**I.    Items seized**:

- Alcatel cell phone, Model 4060A, IMEI: 014699004780956;

- Alcatel cell phone, Model 4060A, IMEI: 014699003987735;

- Alcatel cell phone, Model 4060A, IMEI: 014699007256277;

- Life Wireless cell phone, Model Drive II, IMEI: 354545081961795;

- Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614;

- AT&T Huawei cell phone, Model H1711, Serial number unknown.

**II.   Items to be searched**:

All items described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2423(b) and (f) (travel with intent to engage in illicit sexual conduct), and 2260A (commission of a felony offense involving a minor while a registered sex offender), involving Kyle Matthew Thompson, including, for each cell phone identified above and in Attachment A:

    a.  Any electronic communications with other individuals, including but not limited to, Jane Doe 1, Jane Doe 2, K.S., and/or any other minor, relating to travel to engage in illicit sexual conduct with a minor, or travel by a minor to come to Thompson, sexual contact whether in person to electronic communications evidencing the intent to coerce and entice a minor, have sexual contact with a minor, and the production, distribution, receipt, or possession of child pornography including communications relating to a minor

photographing him/herself to send to Kyle Thompson, or Kyle Thompson to send photographs of himself to another individual.

b. Any electronic communications by any person with any other person, including but not limited to or from Jane Doe 1, Jane Doe 2, and/or any other minor, relating to transfer, receipt, or possession of any nude or partially nude material.

c. Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found, including Graphic Interchange formats (including, but not limited to, JPG, GIF, TIP AVI, and MPEG);

d. Motion pictures, films, videos, and other recordings of visual depictions of child pornography;

e. Information, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography that were transmitted or received using a computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail, including:

   1) Letters and other correspondence including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by U.S. mail or by computer, of child pornography;

   2) Records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

2

3) Records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

4) Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography;

5) Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography. These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

f. Credit card information, which evidences ownership or use of the laptop and cellular telephones listed in Attachment A including payment for Internet access and computers or electronic media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

g. Records or other items, which evidence ownership or use of the laptop and/or cellular telephones, including sales receipts;

3

h.  Evidence of who used, owned, or controlled the laptop and/or cellular telephones at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

i.  Evidence of software that would allow others to control the laptop and/or cellular telephones, such as viruses, Trojan horses, and other forms of malicious software;

j.  Evidence of the lack of such malicious software; and,

k.  Evidence of the times the laptop and/or cellular telephones were used.

4

## ELECTRONICALLY SUBMTITED AFFIDAVIT IN SUPPORT
## OF SEARCH WARRANT

I, FBI Special Agent Elliott M. White, state under oath as follows:

1.      I am employed as a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and has been so employed since April 2015.  I have more than 17 years of experience as a sworn law enforcement officer - military and federal.  I am currently assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency, and am charged with the investigation of crimes occurring in (among other places) Mohave County, Arizona.  My duties include the investigation of violent crimes occurring within Indian Country as well as crimes against children within the District of Arizona.

2.      The information contained in this affidavit is based upon my personal knowledge, training, experience, as well as information provided by other law enforcement officers and witnesses including those listed herein.   I have not included every fact known to me concerning this investigation.  I have set forth only the facts necessary to establish probable cause to support issuance of the requested search warrant.

3.      This affidavit is in support of an application for a search warrant to search six electronic devices more specifically described in Attachment A, seeking evidence of violations of Title 18, United States Code, Sections 2423(b) and (f) Travel with Intent to Engage in Illicit Sexual Conduct, and Section 2260A (commission of a felony against a minor while a registered sex offender).  The things to be searched for and seized are particularly described in Attachment B.  The six items in this affidavit have previously been searched using the most up to date technology; however, I have learned that the

1

forensic software most often used for cell phones has released an upgrade since the six cell phones were last searched, and that it may be possible to retrieve information off of one or more of them.   In an abundance of caution, and in light of the matter set for trial commencing November 1, 2021, therefore, I am requesting this Court's authority to search them again.

### Background/Introduction

4.     On August 10, 2021, a federal grand jury in the District of Arizona, returned a Superseding Indictment charging KYLE MATTHEW THOMPSON (THOMPSON), a/k/a KYLE JASON, a/k/a KATIE MORETZ, with two counts of Travel With Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. §§ 2423(b) and (f), and two counts of Commission of a Sex Offense by a Registered Sex Offender in violation of 18 U.S.C. § 2260A.   Counts 1 and 2, the violations of Travel with Intent to Engage in Illicit Sexual Conduct, named Jane Doe 1 and Jane Doe 2 as victims, respectively.   Counts 3 and 4 corresponded respectively to Counts 1 and 2.   THOMPSON is an adult male, DOB XX-XX-1974 (41 and 42 years old at the relevant times of this investigation).   This matter is currently set for a firm jury trial date November 1 - 5, 2021.

5.     I am the case agent in the federal investigation involving THOMPSON. THOMPSON is a registered sex offender in the State of Arizona, having committed the crime of Attempted Sexual Exploitation of a Minor, a Class 3 Felony, on December 6, 2013, Cause No. CR-2011-00601, Superior Court of State of Arizona, County of Mohave. THOMPSON was released from incarceration from AZ DOC on approximately October

2

6, 2016, after a probation violation in this state case. In the current superseding indictment, Counts 1-4 are alleged to have occurred December 1-December 30, 2016.

## Investigation

6.     In approximately November / December 2016, THOMPSON frequented the social media platform Facebook and engaged in communications with multiple minor age girls in Alabama.

7.     Using Facebook, THOMPSON befriended Jane Doe 1, a minor age girl, age 15 and 16 at relevant times of this investigation, and Jane Doe 2, a minor age girl, age 15 at relevant times of this investigation.  Between December 15, 2016, and December 30, 2016, THOMPSON sent images of himself that sometimes included him being partially nude, and masturbating and/or exposing his penis, to Jane Doe 1 and Jane Doe 2. THOMPSON also enticed Jane Doe 1 and Jane Doe 2 to send nude and partially nude images of themselves, including their vaginal areas and breasts.  THOMPSON talked about having sexual encounters with Jane Doe 1 and Jane Doe 2. THOMPSON communicated with the girls via Facebook and via a cell phone (and likely used his cell phone to access Facebook).

8.     On or about December 27, 2016, THOMPSON departed the District of Arizona and began to travel to Sylacauga, Alabama, the area where Jane Doe 1 and Jane Doe 2 lived.   Other teenage girls he was communicating with also lived in this same area. By December 30, 2016, THOMPSON had arrived in Sylacauga, Alabama and engaged in sexual intercourse with Jane Doe 1 at her residence.   Jane Doe 1 turned 16 on December 31, 2016.   THOMPSON had more sexual contact with Jane Doe 1 in Alabama on several

3

occasions after December 30, 2016, while Jane Doe 1 was 16 years old.   THOMPSON did not have sexual contact with Jane Doe 2.

9.     THOMPSON's activities with Jane Doe 1 were discovered because on January 10, 2017, A.H., the mother of Jane Doe 1, reported to the Talladega County Sherriff's Department (TCSD) (Alabama) investigators that Jane Doe 1 had received inappropriate messages through Facebook from a subject using the profile names of KYLE JASON and KATIE MORETZ.   TCSD Investigator Aaron Green identified the subject as KYLE MATTHEW THOMPSON, a registered sex offender from Mohave Valley, Arizona.   Jane Doe 1 advised Investigator Green she and THOMPSON had exchanged nude images with each other.   Jane Doe 1 also advised that on December 30, 2016, at approximately 9:00 am, THOMPSON came to her residence and had sexual intercourse with her in her bedroom.   Jane Doe 1 further stated that on the night of December 30, 2016, she had left her house late at night, when everyone was asleep, and met THOMPSON who was driving his car (I later interviewed Jane Doe 1 and she believes that she actually left her house to meet THOMPSON on this occasion, the night of December 31, 2016). Jane Doe 1 and THOMPSON had sexual intercourse in his car that night before he returned her home.   Jane Doe 1 stated she performed oral sex on THOMPSON on a later, separate occasion while in his vehicle.   A.H. had observed Jane Doe 1 spending a lot of time on her cell phone so A.H. logged into Jane Doe 1's Facebook account and observed the messages between Jane Doe 1 and THOMPSON.   A.H. identified THOMPSON from a photo lineup.

4

10.     During a forensic interview on January 30, 2017, Jane Doe 1 stated that she started talking to THOMPSON on Facebook around December 20, 2016. Jane Doe 1 knew THOMPSON's name on Facebook as "KYLE JASON." Jane Doe 1 stated that THOMPSON was "friends" on Facebook with her friend, Jane Doe 2. Jane Doe 1 stated that once she and THOMPSON became "friends" on Facebook, he began texting her through Facebook. Jane Doe 1 said that THOMPSON told her he was a movie producer and could help her get famous. Jane Doe 1 said that THOMPSON told her that he was 32-years old. Jane Doe 1 stated she has since learned that he is 41 or 42-years old. Jane Doe 1 said that during their communications, THOMPSON sent her a text stating that Jane Doe 2 wanted to know if she, THOMPSON, and Jane Doe 2 could have three-way sex, and that it was one of Jane Doe 2's fantasies. Jane Doe 1 stated she agreed to it, but it did not happen.

11.     Jane Doe 1 said that on December 30, 2016, THOMPSON texted her and told her that he was in Alabama to see Jane Doe 2 and asked for Jane Doe 1's address. She sent her address and he came over to her house. They hung out in her garage and sat on a couch that they had in the garage. Since the dog kept barking, Jane Doe 1 said she asked THOMPSON if he wanted to go somewhere quieter, and the two went to her bedroom. In her bedroom, Jane Doe 1 said that THOMPSON asked if she wanted to have sex. Jane Doe first said she did not know, but then said yes. He undressed her, then himself. THOMPSON told her he would be gentle. He engaged in digital penetration and sexual intercourse with her, not using a condom. Afterward, the two dressed and went back to the garage.

5

12.     Jane Doe 1 said she saw THOMPSON's car--a blue PT Cruiser with a black convertible top.   Jane Doe 1 said that on this same day, he sent her pictures of him modeling, some with clothes on and some without clothes.   THOMPSON asked Jane Doe 1 for her nude photos.   Jane Doe 1 sent him three-four images in her bra and panties and three to five or more where she was naked.

13.     Jane Doe 1 said her 17 year-old friend, K.S., came over after THOMPSON left.   K.S. was spending the night to celebrate Jane Doe 1's birthday, which was on the following day.   THOMPSON texted Jane Doe 1 and/or K.S. while K.S. was at Jane Doe 1's house.   THOMPSON then came and took K.S. and Jane Doe 1 to Jane Doe 2's home, where they stayed for a little while then came back to Jane Doe 1's home.   Jane Doe 1 stated they had initially planned to go to a movie for Jane Doe 1's birthday but decided to go to the Galleria mall because Jane Doe 2 and THOMPSON were going shopping.

14.     Jane Doe 1 stated her mom took her, her brother, and K.S., to the McDonald's in Sylacauga where they met up with THOMPSON, Jane Doe 2, and Jane Doe 2's brother. THOMPSON introduced himself to A.H. as Jane Doe 2's uncle.   After McDonald's they went to the Galleria.   THOMPSON went into a Spencer's store, and THOMPSON went back to the section of "sex stuff." THOMPSON bought a black mask and something else. Jane Doe 1 stated after leaving the Galleria the group went to Skates 280 (a roller skating rink).

15.     When she arrived home on December 30, 2016, Jane Doe 1 said she texted THOMPSON.   THOMPSON told her that he was going to create a Facebook page and the

6

name would be KATIE MORETZ.  THOMPSON indicated he wanted to see Jane Doe 1 again on December 31, 2016.

16.     Jane Doe 1 stated that after midnight, she snuck out of her home and met THOMPSON.  After parking in a field, THOMPSON had two large beer cans on the floor of the passenger's side of the car, and offered her one.  Jane Doe 1 drank some and got buzzed.  THOMPSON asked her again to have sex.  They did, and this time, he wore a condom.

17.     Jane Doe 1 said after sex, they sat in the car and talked, mostly about Jane Doe 2.  THOMPSON gave the impression to Jane Doe 1 that he was dating Jane Doe 2.  THOMPSON was upset that Jane Doe 2 went off with other guys and had sex with them.  Jane Doe 1 said THOMPSON told her, Jane Doe 1, that she was pretty, and no one had told her that before. THOMPSON told Jane Doe 1 that he wanted to date both her and Jane Doe 2 since they were going to have a three-way.  Jane Doe 1 arrived home about 3:00 a.m. to 4:00 am.

18.     Jane Doe 1 said on January 2nd or 3rd, 2017, K.S. showed up at her house, and K.S., Jane Doe 1, and THOMPSON ultimately ended up in THOMPSON's car in a big field near bales of hay.  THOMPSON asked Jane Doe 1 to give him oral sex, which she did after he placed a towel from his car in between the front and back seats so that K.S. could not see them.  She then gave him oral sex, and he ejaculated in her mouth. THOMPSON laughed about her spitting it out.  Afterward, they went to Jane Doe 2's house, and then THOMPSON told them he had to go to Georgia to visit family and he left.

7

19.     Jane Doe 1 said she and THOMPSON continued to communicate via Facebook texting until January 6, 2017, when her mom saw that they were texting.   Also, sometime on January 6, 2017, THOMPSON also sent her a picture of a newspaper article showing that he was a registered sex offender.   Jane Doe 1 said she since learned he recently got out of jail for child pornography.

20.     On January 26, 2018, during a follow up interview Jane Doe 1 said that Jane Doe 2 had told THOMPSON that Jane Doe 1 was 15 years old before Jane Doe 1 met him.   Jane Doe 1 advised she had also told THOMPSON that she was 15 years old before they had sex at her house on December 30, 2016.   Jane Doe 1 also stated that THOMPSON sent nude images of himself to Jane Doe 1 from his KYLE JASON account on December 30, 2016, before he came to her house.   Further, Jane Doe 1 stated that she and THOMPSON exchanged nude images after her birthday. THOMPSON told Jane Doe 1 he wanted her to send him pictures of her completely unclothed.

21.     On January 31, 2017, Jane Doe 2 was forensically interviewed.   She stated she first met THOMPSON on Facebook.   After about a week on Facebook, THOMPSON had conversations with Jane Doe 2 about sex.   After about another week, THOMPSON sent approximately 30 images of himself, without any clothing on to Jane Doe 2 via Facebook.   Many were full body pictures.     THOMPSON asked Jane Doe 2 for pictures of herself.   Jane Doe 2 sent THOMPSON pictures of her breasts with and without clothes. Jane Doe 2 also sent THOMPSON pictures of her "private parts."

22.     After about three weeks on Facebook, THOMPSON traveled from Arizona to Alabama, and she went to Skates 280 with him.   THOMPSON sent Jane Doe 2 a text

8

saying that he was coming to her house.   About an hour later, THOMPSON, Jane Doe 1, and K.S. came to her house.   THOMPSON tried to convince Jane Doe 2's mother to let her leave with THOMPSON, but her mother said no.

23.     Jane Doe 2 stated that later that day, THOMPSON convinced Jane Doe 2's father to let her go to McDonald's with THOMPSON.   Jane Doe 2 left with THOMPSON and met up with Jane Doe 1's mother.   THOMPSON introduced himself to Jane Doe 1's mother.   They later went to the Galleria and to Skates 280 to celebrate Jane Doe 1's birthday.

24.     During a follow up interview on January 26, 2018, Jane Doe 2 advised that her age, 15, at the time she began talking to THOMPSON on Facebook, was listed on her Facebook profile.   Additionally, Jane Doe 2 told THOMPSON her true age soon after they began chatting.   THOMPSON claimed to be friends with the actress Chloe Grace. Jane Doe 2 she began to get Facebook messages from Chloe Grace, but it appeared to be a new account because it did not have many images on it.   Jane Doe 2 always suspected it was THOMPSON messaging her from that account.

25.     On January 31, 2017, K.S. was forensically interviewed.   K.S. stated she knew THOMPSON on Facebook as KYLE JASON.   She started talking to him through Facebook around November 2016.   K.S.'s friend, Jane Doe 2, got her first talking to THOMPSON.   THOMPSON asked that if he came down to Alabama would K.S. and Jane Doe 2 have sex with him.   K.S. never thought that he would really come there.   Later, K.S. found out that THOMPSON was also talking to Jane Doe 1.   The first day that THOMPSON was there was the day before Jane Doe 1's birthday.   K.S. had gone to Jane

9

Doe 1's house about 11:00 a.m. and THOMPSON came over about an hour later.   Jane Doe 1, K.S. and THOMPSON all went to Jane Doe 2's house.   Later that day, Jane Doe 1 told K.S. that THOMPSON had already been at Jane Doe 1's house earlier in the morning, and they had had had sex.   Later, K.S. recalled going to the McDonald's where they met THOMPSON, Jane Doe 2, and Jane Doe 2's brother.   They went to the Galleria shopping mall, then to Skates 280. K.S. recalled that during the evening, Jane Doe 1 told K.S. she was going to sneak out.   Later, Jane Doe 1 confirmed she had snuck out, met THOMPSON, got "buzzed," and "did stuff."   A few days later, K.S., Jane Doe 1 and THOMPSON were driving around on dirt roads.   THOMPSON and Jane Doe 1 were in the front seats, and K.S. was in the back.   On a dirt road, THOMPSON parked the car and K.S. heard THOMPSON talking and joking about oral.   Jane Doe 1 said okay and he put up a towel between the front and back seats so K.S. could not see them.

26.   On February 10, 2017, FBI SA Kelly Clark obtained sentencing documents from the Mohave County Attorney's Office pertaining to THOMPSON's prior conviction. According to the documents, on February 25, 2011, a grand jury for the Mohave County Superior in the State of Arizona indicted THOMPSON with 10 counts of Sexual Exploitation of a Minor, Class Two felonies.

27.   On December 6, 2013, THOMPSON was convicted of Attempted Sexual Exploitation of a Minor, a Class Three felony and was sentenced to five years of probation. However, THOMPSON violated his probation.   In an internet newspaper article by the Mohave Valley Daily News, June 8, 2014, that reported the violation of probation hearing, THOMPSON's probation officer testified that THOMPSON befriended several underage

10

girls on Facebook using several other names, including KYLE JASON, while on probation. THOMPSON was ultimately sentenced to 2 years in prison.   I conducted a query through the Arizona Department of Corrections online inmate search which reflected that THOMPSON was released from prison on October 2, 2016.

28.     On February 14, 2017, TFO Salser received documents and sex offender applications in Arizona and California for THOMPSON.  According to the documents received, THOMPSON moved to California and registered as a sex offender on January 19, 2017.  THOMPSON had previously registered in Arizona on October 6, 2016, and listed his address on East Bernadette Road, Mohave Valley, Arizona.   It should be noted that on the California registration form, THOMPSON noted that he resided in Arizona prior to January 18, 2017.   THOMPSON also noted that he went to New Braunfels, Texas for his grandfather's funeral on January 2, 2017.   Prior to that, he was in Arizona on December 27, 2016.   After the funeral, he returned to Arizona and then went to California.

29.     I later obtained a history of THOMPSON's sex offender registrations in California during the relevant time periods. According to the history, THOMPSON registered as a sex offender in California on December 8, 2016.   On December 15, 2016, THOMPSON updated his registration by changing his address to transient.   On December 19, 2016, THOMPSON updated his registration again, reporting that he was out of state and listed his address as East Bernadette Road, Mohave Valley, Arizona.

30.     I later obtained an Investigative Note Report from Sex Offender Registration Specialist Susan Callahan of the Mohave County Sheriff's Office. Callahan.   According to a note dated December 20, 2016. THOMPSON contacted Callahan and advised that,

11

California put his old address in Arizona back in the computer system, due to the fact he left California. THOMPSON advised he would be in Arizona for four days and then he was headed to Georgia to move permanently. Callahan advised THOMPSON to send written notice of the new move to Georgia.

31.     On January 26, 2018, I concluded a review of forensic examination reports of electronic devices collected by the FBI Birmingham Division from the Alabama Law Enforcement Agency State Bureau of Investigations.   The devices were previously collected from Jane Doe 1 and parents, and Jane Doe 2 and parents.

32.     I reviewed the reports associated to a LG Model# LG-US425LPP cellular phone collected from Jane Doe 2, and it showed the following significant items:   (1)   Two phone contacts of interest, contact name Kyle with phone number (928) 788-5005, and contact name Chloe Grace with phone number (747) 201-0497.   [Note; The 928 area code is associated to phone numbers in western and northern Arizona, including the region of Mohave Valley where THOMPSON listed as his address on his sex offender registration]; (2) Multiple images of a male individual who appears to be THOMPSON;   (3) Images of female genitalia, as well as images of a female displaying her breasts;   (4) Multiple deleted messages sent to and from Kyle at (928) 788-5005 from the device on December 25, 2016.

33.     I reviewed the report associated to a Samsung Luna Cell Phone Model# SM-S120VL cellular phone collected from Jane Doe 1.   A review of the reports associated to this device revealed the following significant items:   (1)   A phone contact of a Facebook contact listed as ID: 516643923, KYLE JASON; (2)   On December 15, 2016 at 03:50:55 p.m., Jane Doe 1 received an email notification stating that KYLE JASON has confirmed

12

that you are friends on Facebook; (3)   On December 30, 2016 at 04:44:50 a.m., Jane Doe 1 received an email from KYLE JASON that appears to discuss THOMPSON's wish to have sex with Jane Doe 1 and a threesome; (4)   Multiple images of a male that appears to be THOMPSON without his shirt on displaying his underwear or covering his genitalia with items; (5)   Approximately ten images of a male that appears to be THOMPSON displaying or holding his erect penis; (6)   Multiple images of a female that appears to be Jane Doe 1 including images of the female in her underwear displaying her bare buttock and bare breasts.

34.     Facebook, Inc., in compliance with a federal search warrant, provided records pertaining to Facebook account name kyle.jason.100.   I conducted a review of the material associated to Facebook account user name kyle.jason.100, and noted the following significant items:   (1) There were three email addresses associated to the account, and they are: kyle.jason.100@facebook.com, tomkattent@aol.com, and extra742@aol.com; (2) On December   16,   2016,   kyle.jason.100@facebook.com   authored   multiple   online communications to Jane Doe 2 that included multiple images of a male individual who appears to be THOMPSON displaying his penis; (3)   Between December 29, 2016 and January   12,   2017,   online   communications   were   sent   and   received   between kyle.jason.100@facebook.com and Jane Doe 1, however, the content of most of those communications were deleted; (4) According to the transaction records between December 15, 2016 and December 20, 2016, messages were sent from the kyle.jason.100 account using multiple Internet Protocol (IP) addresses.   I conducted an online search of the IP addresses through American Registry for Internet Numbers (ARIN) website and learned

13

that all of the IP addresses used were associated to AT&T Mobility LLC or AT&T Internet Services, 11760 U.S. Highway 1, Suite 600, North Palm Beach, Florida, 33408. Based on my training and experience, this would indicate that THOMPSON was sending messages through Facebook utilizing an AT&T mobile device; (5) According to the transaction records between December 21, 2016 and December 24, 2016, messages were sent from the kyle.jason.100 account using multiple Internet Protocol (IP) addresses. I conducted an online search of the IP addresses through American Registry for Internet Numbers (ARIN) website and learned that two of the IP addresses used were associated to Mohave Broadband, 8550 Highway 95 Suite# D, Mohave Valley, Arizona. Based on my training and experience, this would indicate that THOMPSON was sending messages through Facebook utilizing a device that was connected to the internet using Mohave Broadband's internet service, which is located in Mohave Valley, Arizona.

35.    On June 22, 2018, I received information Susan Callahan. Callahan advised that she spoke with THOMPSON's father ("Father") about contacting THOMPSON. Father advised that THOMPSON had just gone to California to visit a girlfriend and provided the number of 928-577-8729 that would be used to send and receive text messages. I conducted a query of phone number 928-577-8729 which revealed that the phone number was an active wireless number associated to New Cingular/AT&T Wireless.

36.    On July 3, 2018, Father was interviewed by FBI SA Keegan and me at his residence in Mohave Valley, Arizona, and he stated the following. Father stated that the last cellular phone number that THOMPSON was using was 928-577-8729, which Father believed had a cracked screen. Father believed THOMPSON's internet service was

14

through Mohave Broadband and that THOMPSON was using the computers and his phone while THOMPSON stayed at Father's house before THOMPSON traveled to Alabama in December 2016. After THOMPSON's arrest, Father found an HP laptop computer and five cellphones tin his office and van that M.T. said belonged to THOMPSON. Father gave all of these devices to SA Keegan and me. Those devices were secured in the Phoenix FBI Evidence Control Room They are described as follows:

- HP Laptop, (HP Notebook), serial number: CND7128KKW;

- Alcatel cell phone, Model 4060A, IMEI: 014699004780956;

- Alcatel cell phone, Model 4060A, IMEI: 014699003987735;

- Alcatel cell phone, Model 4060A, IMEI: 014699007256277;

- Life Wireless cell phone, Model Drive II, IMEI: 354545081961795;

- Samsung flip cell phone, Model: SM-B311V, MEID: A000004768B614.

37.     Subsequently, on July 11, 2018, Father provided me with a copy of a letter that THOMPSON sent to him while THOMPSON was an inmate at the Coconino County (Arizona) jail after his arrest. Father advised that THOMPSON had asked him to locate two phones and to get rid of them or send them to a relative in Texas. Father stated he had searched for the phones but was unable to find them. On August 13, 2018, Father contacted me again. Father advised me that THOMPSON's mother forwarded him, Father, a letter that she had received from THOMPSON. The letter stated that THOMPSON had a silver cellular telephone in the closet of Father's house that he wanted Father to get rid of. Father advised that he and a family member decided to "tear apart the entire closet." While thoroughly searching the closet, they located a phone that did not

belong to Father and matched the description.   On August 13, 2018, I collected an additional phone from Father that I have also caused to be stored in the Phoenix FBI office evidence. It can be described as:

- AT&T Huawei cell phone, Model H1711, Serial number unknown.

38.   Based on experience and training, I am aware that laptop computers and cellular telephones are commonly used to connect to the internet and to access social media accounts such as Facebook.   I am aware that laptop computers and cellular devices are capable of sending, receiving and storing digital images, digital videos, and other forms of electronic communications to include but no limited to text messages, instant messages, electronic mail (email).   I am also aware that THOMPSON used multiple phone numbers and/or devices to communicate with Jane Doe 1 and Jane Doe 2, and that THOMPSON was also communicating with other minors using these Facebook.

39.   On approximately September 19, 2018, a search warrant (18-04310 MB) was issued by United States Magistrate Judge Lynette C. Kimmins in the District of Arizona to search the above referenced device.   The search warrant was executed by a FBI Computer Analysis Response Team (CART) examiner at the FBI office in Phoenix, Arizona by means of forensic examination.

40.   During the examination, only the HP Laptop, (HP Notebook), serial number: CND7128KKW was able to be completely examined.   A second device, the AT&T Huawei cell phone, Model H1711, Serial number unknown, was not able to be examined due to the device's password lock, however the micro sd card inside the device was able to be examined.   The remainder of the devices were unable to be examined due to the

16

password locks on the devices or a failed internal battery.   I was informed by the CART examiner that due to the limitations in technology, the devices were unable to be examined at that time.

41.    On October 15, 2018, I submitted the search warrant return to the court, and noted that information was only extracted from two of the devices (meaning the full extraction of HP Laptop, (HP Notebook), serial number: CND7128KKW and the partial extraction from the micro sd card inside AT&T Huawei cell phone, Model H1711, Serial number unknown), and that full extractions were pending on six devices.

42.    Since the attempted device examinations, the devices have remained in the custody of the FBI Phoenix Division Evidence Control Room.

43.    I am aware that technology related to digital forensic examinations changes on a regular basis.   The technology that is used to forensically examine digital devices is updated regularly and new tools are developed that aid in the forensic examinations of digital devices that are locked by the user via password/passcode.   In this case, over two years have passed since the original examination attempts and it is possible that the technology now exists to be able to fully examine the remaining six devices.   I am aware the most usual type of forensic software for cell phone devices, for example, has recently been upgraded and may now be able to retrieve data from these six phone devices.

**Conclusion**

44.    Based upon my training, experience, and observations, I submit that there is probable cause to believe that there is evidence of violations of federal law, specifically Title 18, United States Code, Sections 2423(b) and (f) and 2260A, and that the evidence of

such violations is contained within the devices described in Attachment A.   Based on the aforementioned factual information, I respectfully request that a warrant be issued for the search of the six items described in Attachment A, for the items further described in Attachment B.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Elliott M. White
Special Agent
Federal Bureau of Investigation

Sworn and subscribed telephonically before me this ___2___ day of September 2021.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge

18